Matthew L. Rollin (SBN 332631)
**SRIPLAW, P.A.**
8730 Wilshire Boulevard
Suite 350
Beverly Hills, California 90211
323.452.5600 – Telephone
561.404.4353 – Facsimile
Matthew.rollin@sriplaw.com

Counsel for Plaintiff
Viral DRM LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| VIRAL DRM LLC, | CASE NO.: 3:24-cv-06586 |
|---|---|
| Plaintiff, | **COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT AND REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION** |
| v. | |
| FRANCOIS DUBOIS and TF1, | **(INJUNCTIVE RELIEF DEMANDED)** |
| Defendants. | |

VIRAL DRM LLC ("Viral DRM") by and through its undersigned counsel, hereby brings this Complaint against Defendants FRANCOIS DUBOIS "(Dubois") and TF1 (collectively referred to herein as "Defendants") who operate the YOUTUBE CHANNEL named TF1, for damages and injunctive relief, and in support thereof states as follows:

**SUMMARY OF THE ACTION**

1. Viral DRM[1] brings this action for violations of exclusive rights under the Copyright Act, 17 U.S.C. § 106, to reproduce, publicly perform, and distribute Viral DRM's original copyrighted works of authorship and for removal or alteration of copyright management information in violation of 17 U.S.C. § 1202.

---

[1] Viral DRM is the exclusive authorized agent of the copyrighted works at issue in this case. Viral DRM, through written agreement with the videographers and photographers, has the exclusive right to pursue infringement matters relating to these copyrighted works.

1
COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT                                    CASE NO.: 3:24-cv-06586

**JURISDICTION AND VENUE**

2. This is an action arising under the Copyright Act, 17 U.S.C. §§ 501, 1202.

3. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a).

4. Defendants are subject to personal jurisdiction in California and jurisdiction is proper in this district court.

5. Jurisdiction is proper in California because Defendants are transacting business within California by using the YouTube platform that Google operates from within California to (a) commit acts of infringement, (b) profit from acts of infringement, (c) commit CMI violations, and (d) profit from CMI violations.

6. Jurisdiction is proper in California because Defendants committed tortious acts within California on the YouTube platform that Google operates in California. Defendants: (a) committed acts of infringement alleged below in California on the YouTube platform, and (b) committed CMI falsification and removal violations alleged below in California on the YouTube platform.

7. Jurisdiction is proper in California because Defendants caused Viral DRM to suffer a tortious injury in this state caused by an act or omission outside this state. The acts or omissions that the Defendants committed outside the state consisted of: (a) downloading Viral DRM's copyrighted videos, (b) copying Viral DRM's copyrighted videos, (c) editing and creating derivative works of Viral DRM's copyrighted videos, and (d) removing and falsifying Viral DRM's copyright management information. All these acts caused Viral DRM to suffer tortious injury in California because after committing these acts, Defendants then uploaded the infringing videos to YouTube and displayed/performed the infringing videos on the YouTube platform with false CMI or with CMI removed. Defendants then profited from their acts by receiving advertising revenue from infringing videos, and damaged Viral DRM by depriving Viral DRM of the revenue that rightfully belonged to Viral DRM and not Defendant.

8. Jurisdiction is also proper in this district court pursuant to 17 U.S.C. § 512(g)(3)(D) because Defendants consented to the jurisdiction of this federal district court when they provided the

counternotification attached hereto in **Exhibit 3**, because the service provider provided with the counternotification can be found in this judicial district, namely YouTube.

9. Defendants have sufficient minimum contacts with the state of California, there is a direct connection between the Defendants' tortious acts and the state of California, and the exercise of personal jurisdiction over the Defendants complies with the Due Process Clause of the United States Constitution.

10. Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

11. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 1400(a) and 17 U.S.C. § 512(g)(3)(D) because the events giving rise to the claims occurred in this district, Defendants engaged in infringement in this district, Defendants are subject to personal jurisdiction in this district, and because Defendants consented to this venue when Defendants provided the counternotification referred to herein because the service provider provided with the counternotification can be found in this judicial district.

12. Defendants may be served by and through the email address listed in its counternotice and through YOUTUBE that acted as their agent and Defendants agreed to accept service of process through YOUTUBE from Viral DRM or an agent of Viral DRM in the counternotification pursuant to 17 U.S.C. § 512(g)(3)(D).

## **VIRAL DRM**

13. Viral DRM is a Mississippi limited liability company.

14. Viral DRM is a syndicator of award-winning videographic content created by talented videographers who travel around the globe in pursuit of Mother Nature's wrath. Viral DRM's videographers and photographers cover weather extremes from tornadoes, hurricanes, flooding, blizzards, volcanoes and climate change impacts.

15. Viral DRM is affiliated with WXchasing LLC, a Mississippi limited liability company, and Live Storms Media LLC, an Alabama limited liability company. WXchasing is a

3
COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT                    CASE NO.: 3:24-cv-06586

video production company that creates some of the videographic Works that Viral DRM syndicates and licenses. Live Storms Media is a licensing broker of video content owned by or exclusively licensed to Viral DRM and WXchasing.

16. Viral DRM's videos of extreme weather events are frequently copied, downloaded, and reuploaded by infringers. Viral DRM is a popular and frequent source of footage of weather events that cannot be obtained elsewhere. This makes Viral DRM a frequent target for infringers and pirates.

17. Both Live Storms Media and WXchasing operate popular and valuable YouTube channels on the YouTube platform. As of the filing of this Complaint:

  a. Live Storms Media had over 350,000 subscribers and 19,000 videos on its YouTube channel; the most popular Live Storms Media video had over 9 million views; and

  b. WXchasing had over 65,000 subscribers and 475 videos on its YouTube channel; the most popular WXchasing video had over 6.5 million views.

18. The Live Storms Media YouTube channel and the WXchasing YouTube channel are viewed by substantial numbers of California residents who also view advertising placed on the videos on those channels by YouTube.

19. When infringement occurs to Viral DRM's copyrighted Works, Viral DRM is injured and damaged in California. When someone infringes on Viral DRM's copyright like Defendants, Viral DRM loses out on potential sales or licensing revenue to other California businesses. When Viral DRM's copyrighted work is infringed upon and widely distributed on YouTube without Viral DRM's permission like Defendants did, it damages Viral DRM's reputation as a professional source of valuable extreme weather video content and makes it more difficult for Viral DRM to negotiate valuable licenses from clients and potential clients in California in the future.

**YOUTUBE AND GOOGLE LLC**

20. YouTube is a video-sharing platform where users can watch, upload, and share videos. It is one of the most popular websites in the world, with over 2 billion active users.

21. Google LLC owns YouTube.

22. YouTube is headquartered in this judicial district.

23. YouTube's main business is advertising. It generates revenue by selling advertising space on its website and mobile apps. Advertisers can target their ads to specific demographics, interests, and even keywords. This allows them to reach their target audience with a high degree of accuracy. YouTube also earns revenue from its YouTube Premium subscription service. YouTube Premium members can watch videos without ads, download videos for offline viewing, and access YouTube Music Premium. In addition to advertising and subscriptions, YouTube also generates revenue from other sources, such as channel memberships.

24. YouTube is a very profitable business. In 2021, it generated $28.8 billion in revenue and $20.6 billion in profit. Some of the factors that have contributed to YouTube's success are:

    a. The large number of users: YouTube has over 2 billion active users worldwide.

    b. The high level of engagement: Users watch an average of 1 hour and 20 minutes of YouTube videos per day.

    c. The wide variety of content: YouTube offers a wide variety of content, from music videos to educational tutorials to funny cat videos.

    d. The ease of use: YouTube is easy to use and navigate.

    e. The monetization opportunities: YouTube offers a variety of ways for creators to monetize their content, such as through advertising, channel memberships, and Super Chat.

### DEFENDANT

25. FRANCOIS DUBOIS and TF1 operate the YOUTUBE CHANNEL named TF1.

26. It is believed that Francois Dubois is an employee of TF1.

27. Francois Dubois submitted the counternotice in response to Viral DRM's takedown notices. *See* **Exhibit 3**.

28. Defendants copied and downloaded Viral DRM's copyrighted Works from YouTube.

29. After Defendants downloaded Viral DRM's Works, they edited the Works, removed Viral DRM's copyright management information, and then uploaded infringing versions of Viral DRM's Works to YouTube.

30. Defendants copied Viral DRM's Works in order to advertise, market and promote their YouTube channel, grow their YouTube channel subscriber base, earn money from advertising to their YouTube subscribers, and engage in other money-making business activities using Viral DRM's copyrighted media content.

31. Defendants committed the violations alleged in connection with Defendants' businesses for purposes of advertising to the public, including YouTube viewers in California, in the course and scope of the Defendants' business.

32. The YouTube and Google AdSense terms of service prohibit the Defendants from engaging in the actions alleged herein. Specifically, the Defendants agreed (1) they are not allowed to upload content that includes third-party intellectual property (such as copyrighted material) unless with permission from that party or are otherwise legally entitled to do so; (2) they are responsible for the content uploaded to YouTube, and may be liable for any copyright infringement claims that arise from your content; (3) YouTube may remove or disable access to any content that it believes infringes on someone else's copyright.

33. Attached hereto as **Exhibit 1** is a list showing the Defendants' links to its channel, the number of subscribers, the number of videos, and the number of views for the Defendants' most popular videos, and the Viral DRM Works that are the subject of this action.

34. The Defendants' YouTube channel is extremely popular and valuable.

35. The Defendants' YouTube channel earns significant revenue from the performance and display of pirated video content.

36. The Defendants monetized the videos it stole from Viral DRM. Monetizing videos on YouTube involves enabling advertisements to be displayed on your videos, which allows you to earn money through the YouTube Partner Program. The process works like this:

a.	Eligibility: To monetize your videos, you need to meet certain eligibility criteria set by YouTube. You have to have at least 1,000 subscribers on your channel and a total of 4,000 watch hours in the past 12 months.

b.	Joining the YouTube Partner Program: Once you meet the eligibility requirements, you can apply to join the YouTube Partner Program (YPP). This program allows you to monetize your videos by enabling ads on them. If your application is approved, you gain access to various monetization features.

c.	Ad Formats: YouTube offers different ad formats that can appear on your videos, including pre-roll ads (shown before your video starts), mid-roll ads (shown during longer videos), and display ads (overlayed on the video or beside it). The specific types of ads displayed on your videos may depend on factors like the viewer's location and the advertiser's targeting preferences.

d.	Revenue Sharing: When ads are displayed on your videos, you earn a portion of the revenue generated by those ads. The exact revenue split varies, but generally, creators receive around 55% of the ad revenue, while YouTube retains the remaining 45%. The revenue is based on factors such as the number of ad impressions, viewer engagement, and the advertisers' bidding.

e.	AdSense Account: To receive payments for your YouTube earnings, you need to have an AdSense account linked to your YouTube channel. AdSense is a program by Google that allows publishers (in this case, YouTube creators) to earn money from ads. Once your AdSense account is set up and linked to your YouTube channel, you can manage your earnings and payment settings.

f.	Payment Threshold: YouTube pays creators once they reach a payment threshold, which is typically $100. Once your earnings exceed this threshold, you become eligible for payment. YouTube offers various payment methods, such as direct deposit or wire transfer, depending on your country.

g. Other Revenue Streams: While ad revenue is a significant way to monetize your YouTube channel, creators often explore other revenue streams as well. These can include brand partnerships, sponsorships, merchandise sales, crowdfunding, and more.

37. Defendants had access to and downloaded Viral DRM's copyrighted Works hosted by YouTube from Viral DRM's affiliated Live Storms Media YouTube channels or Facebook pages online.

38. Once downloaded, Defendants edited the pirated videos to remove or crop out Viral DRM's proprietary watermarks and metadata. After editing the pirated videos, Defendants combined the Viral DRM's videos with other video content that they either stole from others or created themselves and then reupload the resulting video to their YouTube channel and enabled advertising on them to earn monetization revenue.

### THE COPYRIGHTED WORKS AT ISSUE

39. The authors of the Works at issue are listed in **Exhibit 1,** along with the URLs where the Works can be found online.

40. The Works at issue in this case are registered with the Register of Copyrights pursuant to 17 U.S.C. § 411(a).  Copies of the Registration Certificates are attached hereto as **Exhibit 2**.

41. At all relevant times, Viral DRM was the exclusive agent of the Works at issue in this case.

### INFRINGEMENT BY DEFENDANTS

42. Defendants have never been licensed to use the Works at issue in this action for any purpose.

43. On a date after the Works listed in **Exhibit 1** at issue in this action were created, but prior to the filing of this action, Defendants copied the Works and removed Viral DRM's copyright management information from the Works.

44. Defendants copied the Works, publicly performed the Works, and made further copies and distributed the Works on the internet without Viral DRM's or the authors' permission, and without Viral DRM's copyright management information.

45. Prior to the filing of this action, on a date after the Works were registered, Viral DRM discovered the unauthorized use of the Works by Defendants.

46. Viral DRM notified YouTube and Defendants of the allegations set forth herein in DMCA notices. Attached hereto as **Exhibit 5** are the Takedown notices.

## COUNT I - COPYRIGHT INFRINGEMENT

47. Viral DRM incorporates the allegations of paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48. Viral DRM owns valid copyrights in the Works at issue listed on **Exhibit 1.**

49. The Works at issue in this case were registered with the Register of Copyrights pursuant to 17 U.S.C. § 411(a), as shown in **Exhibit 2**.

50. Defendants copied, displayed, and distributed the Works at issue in this case and made derivatives of the Works without Viral DRM's authorization in violation of 17 U.S.C. § 501. Screenshots of the unauthorized uses are attached hereto as **Exhibit 4**.

51. Defendants profited from the monetization of Viral DRM's copyrighted content by placing advertising on the Viral DRM's Works and those profits rightfully belong to Viral DRM.

52. Defendants' acts were willful.

53. Viral DRM has been damaged.

54. The harm caused to Viral DRM is irreparable.

## COUNT II - REMOVAL OR ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION

55. Viral DRM incorporates the allegations of paragraphs 1 through 46 of this Complaint as if fully set forth herein.

56. The Works at issue in this case set forth on **Exhibit 1** contained copyright management information ("CMI") consisting of watermarks identifying the Works as "NOT FOR BROADCAST" and the property of LIVE STORMS MEDIA or similar markings that Viral DRM uses to identify and associate itself with its Works.

57. Defendants knowingly and with the intent to enable or facilitate copyright infringement, removed CMI from the Works at issue in this action in violation of 17 U.S.C. § 1202(b).

58. Defendants committed these acts knowing or having reasonable grounds to know that they will induce, enable, facilitate or conceal infringement of Viral DRM's rights in the Works at issue in this action protected under the Copyright Act.

59. Defendants caused, directed and authorized others to commit these acts knowing or having reasonable grounds to know that they will induce, enable, facilitate or conceal infringement of Viral DRM's rights in the Works at issue in this action protected under the Copyright Act.

60. Viral DRM has been damaged.

61. The harm caused to Viral DRM has been irreparable.

**COUNT III - FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION**

62. Viral DRM incorporates the allegations of paragraphs 1 through 46 of this Complaint as if fully set forth herein.

63. Defendants knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided copyright management information that is false.

64. By uploading content to YouTube, Defendants declared that they had the necessary rights or permissions to distribute and share that content.

65. Defendants' YouTube channel provided identifying information for Defendants that was copyright management information that is falsely claimed ownership or rights in the Works displayed there that was false and provided to induce, enable, facilitate or conceal infringement of Viral DRM's Works in violation of 17 U.S.C. § 1202(a).

66. Defendants caused, directed and authorized others to commit these acts knowing or having reasonable grounds to know that they will induce, enable, facilitate or conceal infringement of Viral DRM's rights in the Works at issue in this action protected under the Copyright Act.

67. Viral DRM has been damaged.

68. The harm caused to Viral DRM has been irreparable

WHEREFORE, Viral DRM prays for judgment against the Defendants that:

a. Defendants, their officers, agents, servants, employees, affiliated entities, and all of those in active concert with them, be preliminarily and permanently enjoined from committing the acts alleged herein in violation of 17 U.S.C. §§ 501, 1203;

      b.     Defendants be required to pay Viral DRM's actual damages and Defendants' profits attributable to the infringement, or, at Viral DRM's election, statutory damages, as provided in 17 U.S.C. §§ 504, and 1203;

      c.     Viral DRM be awarded its attorneys' fees and costs of suit under the applicable statutes sued upon;

      d.     Viral DRM be awarded pre- and post-judgment interest; and

      e.     Viral DRM be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Viral DRM hereby demands a trial by jury of all issues so triable.

DATED: September 19, 2024          Respectfully submitted,

*/s/ Matthew L. Rollin*
MATTHEW L. ROLLIN
**SRIPLAW, P.A.**
*Counsel for Plaintiff Viral DRM LLC*